UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                :

UNITED STATES OF AMERICA,         :

                                :     21 Cr. 733 (AT)

-v-                             :

                                :

MALIK MCCOLLUM,               :

                                :

               Defendant.     :
----------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
SUPPRESS HIS POST-ARREST STATEMENTS**

DAVID E. PATTON, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
      **MALIK MCCOLLUM**
52 Duane Street, 10th Floor
New York, NY 10007
Telephone: (212) 417-8700

By:    Andrew J. Dalack, Esq.
       (212) 417-8768

       <u>Of Counsel</u>

To:    DAMIAN WILLIAMS, ESQ.
       United States Attorney
       Southern District of New York
       One Saint Andrew's Plaza
       New York, NY 10007

       Attn: AUSA Kyle Wirshba

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................. 1

II.     STATEMENT OF FACTS .................................................................... 2

A.      Before Mr. McCollum was interrogated, he was held overnight
in a toilet-free cage, forced to sleep on a metal bench without access
to food and water. ............................................................................... 2

B.      The officers who first interrogated Mr. McCollum did not warn
him of his *Miranda* rights, consistent with the NYPD field
intelligence office's practices. .............................................................. 2

C.      Mr. McCollum did not understand the *Miranda* warnings that
were read aloud to him during the second interview. ............................... 5

III.    ARGUMENT ................................................................................... 6

A.      The Government has failed to prove by a preponderance of the
evidence that the NYPD did not obtain Mr. McCollum's recorded
confession through a violative two-step interrogation procedure. ............. 6

   1.   NYPD officers interrogated Mr. McCollum while he was in custody and
        intentionally avoided issuing *Miranda* warnings, circumstances highly
        suggestive of a violative two-step interrogation technique ...................... 7

   2.   The Government has not offered evidence sufficient to disentangle the
        first, un-*Mirandized* interrogation from the recorded and purportedly
        *Mirandized* interrogation. ............................................................. 8

   3.   The Government has failed to demonstrate that the content of the two
        interrogations was distinct and did not overlap ..................................... 9

   4.   There is no dispute that the two interrogations were close in time and in
        essentially the same custodial setting. ............................................... 9

   5.   Because Officer Jones was present for both of Mr. McCollum's
        interrogations, the Court should conclude that there was continuity in the
        police personnel involved ............................................................... 10

   6.   The Government has failed to prove that Abidin and Gidarisingh's un-
        *Mirandized* interrogation occurred after Jasiurkowski's recorded
        interrogation, leaving it just as likely that Jasiurkowski's interrogation
        was effectively a continuation of Mr. McCollum's purposefully un-
        *Mirandized* encounter with Abidin and Gidarisingh. ........................... 10

B.      Before purportedly waiving his *Miranda* rights and answering
Detective Jasiurkowski's questions, Mr. McCollum did not
understand that he had a constitutional right to consult an attorney
and to have one present for any and all police-led interrogation. ........... 11

IV.     CONCLUSION ............................................................................. 13

## I.    SUMMARY OF ARGUMENT

The Court should grant Malik McCollum's motion to suppress his post-arrest statements because the Government has not sustained its burden and proved that the NYPD's interrogation of Mr. McCollum complied with the Fifth Amendment.

First, the Government has not established by a preponderance of the evidence that the NYPD's <u>deliberately</u> unrecorded and un-*Mirandized* interrogation of Mr. McCollum occurred after his video-recorded and (purportedly) *Mirandized* confession. Rather, based on the totality of the circumstances, it is just as likely that the NYPD interrogated Mr. McCollum—deliberately withholding the *Miranda* warnings—before interrogating him a second time to obtain his video-recorded confession. Because the NYPD's premeditated two-step interrogation process effectively circumvented *Miranda*'s protections, the Court should suppress Mr. McCollum's recorded confession.

Second, and even assuming arguendo that the Government has proved that the NYPD's two-step interrogation process did not violate Mr. McCollum's Fifth Amendment rights, the Government has not established that Mr. McCollum knowingly and voluntarily waived his *Miranda* rights. There is no evidence in the record of Mr. McCollum's purported *Miranda* waiver except for the videorecording of his interrogation by Detective Jasiurkowski and Mr. McCollum's affidavit in support of his opening motion. The video clearly shows Detective Jasiurkowski breezing through the *Miranda* warnings, presenting them as a pro forma and perfunctory prerequisite necessary to allow the *police to answer Mr. McCollum's questions*. The recorded exchange belies any notion that Jasiurkowski's instructions brought Mr. McCollum's rights home to him in an intelligent and thorough

manner. Because there is nothing else to rebut Mr. McCollum's sworn statement that—
after sitting in a cell for hours without food and water—he answered the NYPD's
questions without fully understanding the scope of his right to an attorney, the Court
must suppress his recorded confession.

## II.    STATEMENT OF FACTS

### A.  Before Mr. McCollum was interrogated, he was held overnight in a toilet-free cage, forced to sleep on a metal bench without access to food and water.

Around 2:19 a.m. on July 30, 2021, Malik McCollum was arrested in the Bronx by
Officer Rashard Jones, and accused of unlawfully possessing a firearm. (June 28, 2022
Hr'g Tr. 7:1-4; 14:9-16.) While Officer Jones remained at the scene for the NYPD evidence
collection team, Mr. McCollum was transported by other officers to the NYPD's 40th
precinct. (Tr. 7: 14-15.)

At the precinct, the NYPD held Mr. McCollum on a metal bench in a cell for over 10
hours without providing him access to food, water, or a toilet. (Tr. 18: 23-25, 19: 1-17.)
Officer Jones testified that he was in charge of supervising and caring for Mr. McCollum
and spent those 10 hours in a room adjacent to the cell where Mr. McCollum was held.
(Tr. 8: 4-5, 9-16.)

### B.  The officers who first interrogated Mr. McCollum did not warn him of his *Miranda* rights, consistent with the NYPD field intelligence office's practices.

While detained at the 40th precinct on July 30, 2021, Mr. McCollum was questioned
three times. (Tr. 9:11-19.) First, three field intelligence officers ("FIOs") questioned Mr.
McCollum about any knowledge of criminal activity. (Tr. 57: 16-18.) Mr. McCollum's

Affidavit, Ex. A at ¶4 to Motion to Suppress. The purpose of each precinct's field intelligence office is to obtain and disseminate intelligence about criminal activity citywide. (Tr. 29: 11-14; 30: 10-19.) Officer Gidarisingh, one of the two FIOs, explained that, as part of these interviews, individuals are brought to the field intelligence office for questioning about any known shootings, gang activity, robberies, or drug deals. (Tr. 41: 20-25; 42: 1-2.) Officer Gidarisingh also testified that the NYPD does not give *Miranda* warnings during FIO interviews because information provided during these interviews is not used against the suspect. (Tr. 30:20-21.) Indeed, no *Miranda* warnings were provided to Mr. McCollum in this first interview for him to know his statements would be inadmissible. Mr. McCollum's Affidavit, Ex. A at ¶4 to Motion to Suppress. Officer Gidarisingh further testified that Mr. McCollum had one hand cuffed to the chair. (Tr. 45: 1-2.) Mr. McCollum was not free to leave the precinct, and he was in custody during the FIO interview. (Tr. 45: 14-17; 18-19.)

Second, around 12:20 p.m., Detective Mariusz Jasiurkowski questioned Mr. McCollum about the alleged offense. *See* Defense Ex. D at 4:57 to 27:37; (Tr. 18: 2-4.) Third, around 12:46 p.m., after making statements to Detective Jasiurkowski, Mr. McCollum was questioned again by a new detective[1] about whether he could report on any criminal activity. *See* Defense Ex. D at 28:09 to 32:17. The new detective told Mr. McCollum he was "a different type of detective" and asked if Mr. McCollum knew information about other wanted crews in the neighborhood. *Id.* at 28:16 to 30:58. Mr. McCollum denied knowing information about other wanted crew activities in the area, and

---

[1] This detective's name and title has not been provided by the Government. The distinguishing feature of the officer is that he is bald.

the new detective ended the interview. *Id.* at 30:59 to 32:20. The NYPD filmed the interviews that took place at 12:20 p.m. and 12:46 p.m. *See* Defense Ex. D. But the first interview that was conducted by the FIOs is only documented in a handwritten log maintained by the NYPD and in a DD-5 report. Government Ex. 1; Defense Ex. D. Neither the log nor the DD-5[2] report reflects the time of the first interview. (Tr. 53: 5-7; Tr. 68: 9-14.) Detective Abidin testified that he intentionally did not include the time on the DD-5 report to "protect the source" and keep the identity of the interviewee (Mr. McCollum) secret. (Tr. 68: 11-20; Tr. 69: 13-17.) Detective Abidin also testified that the same DD-5 also included filled-in boxes for Mr. McCollum's real name, NYSID number, date of birth, race, weight, height, age, citizenship status, eye color, hair color, hair length, hair style, complexion, skin tone, sex. (Tr. 69: 18-25; Tr. 70: 1-25; Tr. 71: 1-3.) Detective Abidin further testified that NYPD officers and members of the district attorney's office have access to the DD-5 report, and if anybody looked at the report, they would know field intelligence officers interviewed Malik McCollum on July 31. (Tr. 71: 20-25; Tr. 72: 1-8.) He testified that someone would know all of the information they needed to know about Mr. McCollum's interview with the field intelligence officer except the time it occurred. (Tr. 72: 16-19.)

The Government disputes Mr. McCollum's account of the order of the interviews. Officer Jones and Officer Gidarisingh testified that Mr. McCollum spoke to Detective Jasiurkowski first, rather than the FIOs. (Tr. 24: 4-23; Tr. 39: 11-21.) Specifically, Officer

---

[2] Detective Abidin testified that a DD-5 is an investigative note that officers prepare to create a chronological log of when certain things occur in the life of a case. DD-5s are kept in the NYPD's electronic case management system. (Tr. 53:14-23.)

Jones testified that he recalled taking Mr. McCollum to be interviewed by the FIOs. (Tr. 23: 7-17.) If that is true, the FIOs asked Mr. McCollum the very same questions as the bald detective who interviewed Mr. McCollum after Detective Jasiurkowski. Defense Ex. D at 28:09 to 32:17.

### C. Mr. McCollum did not understand the *Miranda* warnings that were read aloud to him during the second interview.

During the second interrogation, Detective Jasiurkowski and Officer Jones interrogated Mr. McCollum about the alleged offense. *See* Ex. D at 4:57 through 27:37. Mr. McCollum had not slept since the night before and he was tired; he had not had any water or food in over 12 hours and was hungry and thirsty; and he had not been provided access to a toilet and needed to use the bathroom. *See* Mr. McCollum's Affidavit, Ex. A at ¶4 to Motion to Suppress; Ex. D at 27:38. *See also* (Tr. 18: 23-25; 19: 1-14.)

Before reading aloud the *Miranda* warnings, Detective Jasiurkowski instructed Mr. McCollum that he was "going to read you these warnings" and "as I read them to you, just respond yes." Ex. D, 6:51 to 7:20. Then, in less than 30 seconds, Detective Jasiurkowski ran through all five *Miranda* warnings and asked in rapid succession after each warning, "Do you understand?" *Id*. In an obvious daze, Mr. McCollum muttered yes. *Id*.

Mr. McCollum was not otherwise apprised of his *Miranda* rights. Detective Jasiurkowski never provided Mr. McCollum with a written advice of rights form or mentioned the first interview with the FIOs. In fact, Mr. McCollum was not clear on why he was being interrogated for a second time, nor did he understand that he had the right to have an attorney present with him at that moment for any questioning. Mr. McCollum's Affidavit, Ex. A at ¶6 to Motion to Suppress.

## III.   ARGUMENT

The Court should suppress Mr. McCollum's post-arrest statements because they were obtained through a violative two-step interrogation procedure. In the alternative, because Mr. McCollum's purported *Miranda* waiver was neither knowing nor voluntary, his confession is inadmissible.

### A. The Government has failed to prove by a preponderance of the evidence that the NYPD did not obtain Mr. McCollum's recorded confession through a violative two-step interrogation procedure.

Mr. McCollum's statements were obtained through a custodial interrogation that triggered his constitutional rights to (1) consult with an attorney before answering any questions and (2) have an attorney present during any questioning. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.").

Police may not circumvent *Miranda* protections by utilizing a two-step interrogation process, where a person is questioned without the *Miranda* warnings, made to confess, *mirandized*, and then questioned a second time. *United States v. Pritchette*, 219 F. Supp. 3d 379, 383 (S.D.N.Y. 2016), quoting *Missouri v. Seibert*, 542 US 600, 609 (2004). Under Second Circuit precedent, post-warning incriminating statements will generally be excluded if law enforcement deliberately utilized a two-step process calculated to undermine the defendant's *Miranda* rights ". . . unless curative measures are taken to obviate the violation before the defendant makes a post-warning statement." *Pritchette*, 219 F. Supp. 3d at 383-84, quoting *United States v. Moore*, 670 F.3d 222, 229 (2d Cir.

2012). *See United States v. Capers*, 627 F.3d 470, 477 (2d Cir. 2010).

In assessing whether a later *Mirandized* interrogation is tainted by such a two-step process, courts look to the totality of the objective and subjective evidence surrounding the interrogations. *Pritchette*, 219 F. Supp. 3d at 384, *Moore*, 670 F.3d at 229. The Second Circuit has "indicated helpful indicia for whether an alleged two-step interrogation was intended to circumvent *Miranda* warnings." *Pritchette*, 219 F. Supp. 3d at 384; *Moore*, 670 F.3d at 230. These factors, taken from *Seibert* are: "1) the completeness and detail of the questions and answers in the first round of interrogation, 2) the overlapping content of the two statements, 3) the timing and setting of the first and second, 4) the continuity of police personnel, and 5) the degree to which the interrogator's questions treated the second round as continuous with the first." *Pritchette*, 219 F. Supp. 3d at 384; *Seibert*, 542 US at 615. The Second Circuit has also found deliberateness when officers purposefully delay administering *Miranda* warnings for illegitimate reasons to undermine the effectiveness of later *Miranda* warnings. *Capers*, 627 F.3d at 480-84.

The prosecution bears the burden of disproving by a preponderance of the evidence that law enforcement deliberately used a two-step interrogation strategy to deprive the defendant of *Miranda* protections. *Moore*, 670 F.3d at 229. *See also Capers*, 627 F.3d at 479.

> 1. NYPD officers interrogated Mr. McCollum while he was in custody and intentionally avoided issuing *Miranda* warnings, circumstances highly suggestive of a violative two-step interrogation technique.

The Second Circuit has relied on evidence of an officer's purposeful attempt at delaying the administering of *Miranda* warnings in finding that officers deliberately

7

utilized a two-step interrogation technique. *Capers*, 627 F.3d at 480. In their

determination, the *Capers* court stated, "The only legitimate reason to delay intentionally

a *Miranda* warning until after a custodial interrogation has begun is to protect the safety

of the arresting officers or the public —neither of which was an issue here." *Id.* at 481.

Here, Officer Gidarisingh testified that he and Detective Abidin purposefully

avoided reading Mr. McCollum his *Miranda* rights before interrogating him, even though

he was clearly in custody, handcuffed to a chair. The court in *Capers* emphasized that

there is not an exception to *Miranda* that allows a delay to preserve evidence or gather

information, "especially when it is obvious that the suspect is in custody." Because Mr.

McCollum was tucked inside of a police precinct, handcuffed to a chair, he was not in a

position to put the officers' lives in danger. He was not free to leave the precinct and posed

no threat to the public. There was no permissible reason for Abidin and Gidarisingh to

have withheld issuing *Miranda* warnings before interrogating Mr. McCollum. These

circumstances are highly suggestive of the NYPD's use of a violative two-step

interrogation procedure, and weigh against admitting Mr. McCollum's recorded confession

at trial.

> 2. The Government has not offered evidence sufficient to disentangle the
>    first, un-*Mirandized* interrogation from the recorded and purportedly
>    *Mirandized* interrogation.

The Government has failed to introduce evidence sufficient to illustrate the

substance of Mr. McCollum's un-*Mirandized* interrogation by Abidin and Gidarisingh. The

Government's evidence was primarily limited to the officers' testimony about whether the

so-called intelligence "debrief" yielded positive or negative results. Although the officers

testified that they did not create a detailed report of the interaction because Mr.

McCollum did not provide much information, no witness provided a substantive record of

the questions asked or Mr. McCollum's responses. Accordingly, the Government has failed

to adequately show that Gidarisingh and Abidin's questioning was *not* detailed or

complete, and the first *Seibert* factor weighs in Mr. McCollum's favor.

3. The Government has failed to demonstrate that the content of the two interrogations was distinct and did not overlap.

The Government has not proved by a preponderance of the evidence that the

content of the two interrogations at issue did not overlap. Again, in order to disprove that

the NYPD engaged in a deliberate two-step interrogation to circumvent Mr. McCollum's

*Miranda* protections, the Government has the burden of establishing that the content of

Mr. McCollum's two interrogations did not overlap. The Government has failed to meet

this burden because it provided no meaningful record of the exchange between Mr.

McCollum, Abidin, and Gidarisingh. The officers testified that Mr. McCollum declined to

answer their questions, and they denied asking him questions about the firearm he is

charged with unlawfully possessing. But besides these self-serving recollections, there is

no other evidence illustrating their exchange or corroborating the officers' version of

events. Because there is no way to reasonably confirm what was discussed during Abidin

and Gidarisingh's admittedly un-*Mirandized* interrogation of Mr. McCollum, the

Government cannot sustain its burden as to the second *Seibert* factor.

4. There is no dispute that the two interrogations were close in time and in essentially the same custodial setting.

Although there is a dispute as to the chronology of the two interrogations, there is

9

no dispute that they occurred the same day and close in time, and that Mr. McCollum was interrogated twice within the same precinct. *Supra* (Tr. 24: 4-23.) There is no dispute that at all times Mr. McCollum was handcuffed or caged, in custody, and plainly not free to leave. (Tr. 18: 9-20; Tr. 45: 1-2; Tr. 45: 14-17; 18-19.)  Accordingly, this third *Seibert* factor also weighs in favor of Mr. McCollum's claim.

> 5. Because Officer Jones was present for both of Mr. McCollum's interrogations, the Court should conclude that there was continuity in the police personnel involved.

The defense concedes that Abidin and Gidarisingh, who admitted to interrogating Mr. McCollum and purposefully withholding *Miranda* warnings, were not present for Jasiurkowski's recorded interrogation of Mr. McCollum. But Officer Jones testified that he was present for both interrogations, and therefore the defense submits that there was enough continuity in the police personnel involved to weigh the fourth *Seibert* factor in Mr. McCollum's favor.

> 6. The Government has failed to prove that Abidin and Gidarisingh's un-*Mirandized* interrogation occurred after Jasiurkowski's recorded interrogation, leaving it just as likely that Jasiurkowski's interrogation was effectively a continuation of Mr. McCollum's purposefully un-*Mirandized* encounter with Abidin and Gidarisingh.

For the fifth *Seibert* factor, the Government has not proven by a preponderance of the evidence that none of the detectives from the *Mirandized* interview, treated that interview, as a continuation of the first interview session. In fact, there is potentially evidence that the questions of the first un-*Mirandized* interrogation directly overlapped with the later bald detective's questioning when he asked Mr. McCollum about other neighborhood crews at the end of the recorded *Mirandized* interview. Officer Gidarisingh

testified that they asked Mr. McCollum questions about other crimes happening in the neighborhoods and city to see if he had any information that leads to other criminal activity. In the recorded *Mirandized* interrogation, the last bald detective asked Mr. McCollum whether he knew about other wanted crews in the neighborhood. If the testimony is accurate, then these questions appear to almost directly overlap. The difference is that the first questioning from the three officers was when Mr. McCollum was un-*Mirandized*, and when the answers would be inadmissible. Mr. McCollum had no way of knowing his answers would be inadmissible. The second interview, the first detective breezed through the *Miranda* warnings, and the bald detective made no attempt to make sure Mr. McCollum knew his rights. Instead, he asked the same questions from the first interrogation, except this time Mr. McCollum's answers would be admissible against him. The Government has not proved that Mr. McCollum knew these two interrogation sessions were not a continuous process. As discussed in *Capers*, the Government has also not proved that any curative steps were taken so that Mr. McCollum would know that he did not have to re-answer the same questions for the bald detective.

   **B. Before purportedly waiving his *Miranda* rights and answering Detective Jasiurkowski's questions, Mr. McCollum did not understand that he had a constitutional right to consult an attorney and to have one present for any and all police-led interrogation.**

   Even if the court finds that there was not a deliberate two-step interrogation, the Government has still not proven that Mr. McCollum's *Miranda* waiver was knowing and voluntary. Police protect a citizen's Fifth Amendment right against self-incrimination when administering *Miranda* warnings. *United States v. Anderson*, 929 F.2d 96, 98 (2d. Cir. 1991). "Because in-custody interrogation contains psychological pressures that cause a

suspect to speak when he would otherwise remain silent, the prosecution must show that this safeguard of informing the accused of his rights was actually employed . . .." *Id.* at 98-9., As the Second Circuit has articulated "The purpose of the *Miranda* warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary." *United States v. Carter*, 489 F.3d 528, 534 (2d Cir.2007) (quotations omitted). The Government bears the burden of proving by a preponderance of evidence that a valid waiver occurred. *Berghuis v. Thompkins*, 560 U.S. 370 (2010); *United States v. Male Juvenile*, 121 F.3d 34, 39 (2d Cir.1997). The waiver inquiry has two components: the accused's relinquishment of his rights must have been (1) "knowing, which is to say that 'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it,'" and (2) "voluntary, which is to say 'that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir.2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Here, the Government did not produce any evidence that Mr. McCollum's purported *Miranda* rights waiver was both knowing and voluntary. The initial Motion to Suppress argued that Detective Jasiurkowski's thirty second oral recantation of the *Miranda* warnings was not sufficient to ensure that Mr. McCollum understood the rights he was abandoning and the consequences of that action. The Government did not offer any evidence to the record to show that Mr. McCollum was aware that he could have an attorney present during his interrogation session. The Government must prove by a

preponderance of the evidence that Mr. McCollum understood what his rights were. The Government did not offer any evidence to make such a showing. For the foregoing reasons, the Court should find that Mr. McCollum did not make a knowing and voluntary waiver of his *Miranda* rights.

## IV.   CONCLUSION

For the reasons set forth above, the Court should suppress Mr. McCollum's post-arrest statements and preclude the Government from introducing them in its case-in-chief.

Dated: New York, NY                          Respectfully Submitted,
      July 14, 2022

Andrew J. Dalack, Esq.
Assistant Federal Defender
(212) 417-8768

13